Juces concurrentes: Sres. Presidente Quiñones y Asociados Hernández y MacLeary.

El Juez Asociado Sr. Figueras no formó Tribunal en la vista de este caso.

---

FRAU *v.* CANALS.

APELACIÓN procedente de la Corte de Distrito de Arecibo.

No. 70.—Resuelto en Noviembre 19, 1903.

DIVORCIO.—MAL TRATO DE OBRA.—La frase "mal, trato de obra", empleada como causa de divorcio en la Orden General de 17 de Marzo de 1899, significa no sólo la repetición de actos externos de violencia de un cónyuge para con el otro, sino también cualquiera conducta seguida por uno de ellos hacia el otro, que haga físicamente imposible la cohabitación de ambos, so pena de inminente riezgo para la vida del cónyuge perseguido.

ID.—La conducta cruel y alevosa de un cónyuge para con el otro es causa bastante para decretar el divorcio por *mal trato de obra.*

DIVORCIO.—PENSIÓN ALIMENTICIA.—La pensión alimenticia que el Tribunal señalare á la esposa al tiempo de iniciarse una demanda de divorcio es una medida provisional que debe cesar tan pronto como se haga firme la sentencia definitiva que ponga término al pleito.

DIVORCIO.—SEPARACIÓN DE BIENES.—La separación definitiva de los bienes gananciales y la pérdida, por parte del marido, de la administración de los bienes exclusivamente propios de la mujer, son consecuencias necesarias de la sentencia que decrete el divorcio entre ambos cónyuges.

*Mr. Texidor,* for appellant.

*Mr. Alvarez Nava,* for respondent.

No. 70.—Decided November 19, 1903.

DIVORCE—ALIMONY—The alimony assigned by the court to the wife, upon the institution of a divorce suit, is a temporary measure which must cease as soon as the case is determined by a final judgment.

DIVORCE—SEPARATION OF PROPERTY.—The consequence of a judgment granting a divorce is the definite separation of the property belonging to the conjugal partnership, the husband forfeiting the administration of the property exclusively belonging to his wife.

EXPOSICIÓN DEL CASO.

En el recurso de casación por infracción de ley, ahora de apelación, que ante Nos pende, interpuesto por Don Pedro A. Canals, que se mostró parte ante este Tribunal Supremo, bajo la dirección del Letrado Don Antonio Alvarez Nava, solicitando la revocación y anulación de la sentencia dictada por el Tribunal de Distrito de Arecibo, que literalmente dice así:

"En Arecibo, á 31 de Enero de 1902.—Visto en juicio oral y público el pleito de divorcio promovido ante esta Corte de Distrito por Doña Emilia Frau Vázquez, casada, mayor de edad, sin profesión, vecina de Lares, representada y dirigida por el Abogado Don Elpidio de los Santos Laguardia, contra Don Pedro Antonio Canals, casado, mayor de edad, propietario y vecino también de Lares, representado y dirigido por el Abogado Don Simón Largé y contra el Ministerio Fiscal.

*Resultando:* que en 26 de Junio de 1899, Don Pedro Antonio Canals y Doña Emilia Frau y Vázquez, ambos naturales de España, contrajeron matrimonio canónico en el pueblo de Lares, quedándose á vivir en el mismo pueblo en donde fijaron su residencia. A los tres días de efectuado el matrimonio, se manifestó en la esposa, que sólo contaba diez y nueve años de edad, un flujo vaginal de carácter blenorrágico que más tarde se extendió al útero. Las relaciones sexuales entre ambos cónyuges no se suspendieron, y en el mes de Marzo del año siguiente, la esposa abortó un feto de seis meses, trasladándose tres meses después á casa de su madre Doña Ruperta Vázquez, á lo que accedió el marido Canals, aunque con desagrado, y durante cuatro meses la pasó una corta mensualidad para que atendiera á su curación, lo que hasta el presente no ha conseguido Doña Emilia.

*Resultando:* que en 21 de Febrero de 1901, Doña Emilia Frau, que continuaba viviendo en la casa de su madre Doña Ruperta Vázquez, presentó con dirección de Letrado ante esta Corte de Distrito, demanda de divorcio contra su esposo Don Pedro Antonio Canals, alegando los hechos expuestos en el anterior Resultando, y además: que hacía siete meses y medio que por intervención de varias personas, fué trasladada á la casa de su legítima madre Doña Ruperta, donde residía en vista de la necesidad de que estuviera separada de su legítimo referido consorte: que en 2 de Julio del 1900 envió el Sr. Canals á su legítima consorte veinte y cinco pesos para que con ellos atendiera todo el mes á sus urgencias, no obstante hallarse dicha señora en esa época en el período más grave de las dolencias que viene padeciendo: que en 2 de Julio del 1900 envió el Sr. Canals á su legítima consorte, enferma, veinte pesos en cada uno de dichos meses y le exigió le diera recibo:

Costs.—Costs shall be imposed upon that litigant who loses his case on all
points.

STATEMENT OF THE CASE.

This is an appeal in cassation for error of law, now appeal,
pending before us, taken by Pedro A. Canals, who entered
an appearance in this Supreme Court through his counsel,
Antonio Alvarez Nava, praying for the reversal and annul-
ment of a judgment rendered by the District Court of Are-
cibo, which literally reads as follows:

"In Arecibo, January 31, 1902.—The public hearing has been had in
this action for divorce prosecuted in this District Court by Emilia Frau
Vázquez, married, of legal age, without any profession, a resident of Lares,
represented by Attorney Elpidio de los Santos Laguardia, against Pedro An-
tonio Canals, married, of legal age, property owner and likewise a resident
of Lares, represented by Attorney Simón Largé, and against the Department
of Public Prosecution.

"On June 26, 1899, Pedro Antonio Canals and Emilia Frau y Vázquez,
both natives of Spain, contracted a canonical marriage in the town of Lares,
where they established their residence. Three days after the marriage, the
wife, who was only nineteen years of age, noticed that she was suffering from
a vaginal flow, in the nature of a blennorrhea or gleet, which later extended
to the uterus. The sexual relations between husband and wife were not dis-
continued, and in March of the following year, the wife had a miscarriage
being delivered of a six-month fetus. Three months after she moved to
the home of her mother, Ruperta Vázquez, with her husband's reluctant
consent; and during four months she was assigned by the latter a small
allowance for medical treatment, but a cure was not effected.

"On February 21, 1901, Emilia Frau, who continued to live at her
mother's house, filed through her counsel, in the District Court of Arecibo, an
action for divorce against her husband, Pedro Antonio Canals, alleging the
facts above set forth, and stating further: that about seven and a half
months since, through the intervention of several persons, she had moved to
her mother's house, where she resided because it was necessary that she
should live apart from her said husband; that on July 2, 1900, Canals sent
his wife twenty-five dollars wherewith to attend to her most urgent necessities
during the month, although at the time she was going through the most
serious period of her illness; that on July 2, 1900, Canals sent his sick wife
twenty dollars in each of aforesaid months, (*sic*) and demanded a receipt
from her; that from October to the date on which the case was placed in the
hands of her attorney, he has supplied her with no more money; that since

que desde Octubre hasta la fecha de la instrucción dada al Letrado, no le ha dado más cantidad en efectivo: que desde el 25 de Noviembre le ha sido suspendido el despacho de medicinas, y que estuvo atendida por los médicos solamente en las curaciones que no exigían la asistencia de un buen especialista, según le recomendaban los referidos médicos que la asistían, dada la índole de la enfermedad que padeco.

*Resultando:* que como fundamentos de derecho de su demanda, Doña Emilia Frau y Vázquez adujo la Orden General de 17 de Marzo de 1899, sancionada por el Bill Foraker, según los que es causa de divorcio *ad vinculum,* el maltrato de obra inferido por uno de los cónyuges, y terminó solicitando que se declarara roto el vínculo matrimonial entre ella y Don Pedro A. Canals, quedando ambos cónyuges en libertad absoluta, así como que se reservase á la esposa sus acciones y derechos para exigir del marido indemnización en la vía coreespondiente, por daños y perjuicios que hubiere podido experimentar. A la demanda se acompañaron los documentos siguientes: una carta dirigida por Don P. Vilella á Doña Ruperta Vázquez sobre una conferencia que tuvo con Canals, referente á su hija Emilia: otra dirigida á la misma señora por Don Salvador Picornell sobre el mismo asunto: una certificación del Dr. Sein, sobre asistencia á Doña Emilia Frau: la partida de matrimonio de los padres de Doña Emilia: la del contraido por Don Pedro A. Canals con la referida Frau: certificación de las contribuciones que en el año económico de 1900 á 1901 aparece pagando el Sr. Canals: otra certificación del Dr. Sein sobre asistencia de la Frau, y la autorización al Letrado Sr. Santos para representar á la señora Frau en las reclamaciones contra el Sr. Canals.

*Resultando:* que admitida la demanda interpuesta y de conformidad con las medidas preventivas ordenadas en la Orden General de 17 de Marzo de 1899, procedió la Corte de Distrito á depositar provisionalmente la esposa en casa de su madre Doña Ruperta Vázquez, y le señaló de bienes del marido la pensión para alimentos de cincuenta dollars mensuales y mandó seguir, digo, requerir al Canals para su entrega inmediata, bajo apercibimiento de apremio y que se anotara la demanda en el Registro de la Propiedad, dando traslado de ella por veinte días al demandado y el Ministerio Fiscal.

*Resultando:* que el Letrado Don Simón Largé, en representación de Don Pedro A. Canals, contestó la demanda alegando en primer término la excepción de incompetencia de jurisdicción, fundada en la extranjería de los contrayentes, en cuya justificación acompañó los documentos que lo acreditaban, y celebrada vista del pleito ante esta Corte de Distrito, respecto á la excepción alegada, recayó auto, contra el cual no se interpuso recurso alguno, declarándose competente esta Corte de Distrito para conocer del pleito de divorcio entablado y mandándose seguir adelante la tramitación del mismo,

November 25, the supplying of medicines for her has been stopped, and she has had medical assistance only in cases that did not call for the services of a first-class specialist, which, according to the physicians attending her, should be summoned, in view of the nature of her illness.

"As legal grounds of action, Emilia Frau y Vázquez cited General Order of March 17, 1899, confirmed by the Foraker Act, according to which, cruelty by one of the spouses toward the other, when the same is of a physical character, is sufficient cause for divorce, and prayed that the marriage bonds between her and Pedro A. Canals be declared dissolved, both spouses remaining absolutely free, and that the wife's right to recover from her husband such damages as she might have suffered be reserved to her. The complaint was accompanied by the following documents: a letter from P. Virella to Ruperta Vázquez, concerning an interview had with Canals, in regard to her daughter Emilia; another letter to the same person from Salvador Picornell upon the same subject; a certificate from Dr. Sein concerning medical attendance to Emilia Frau; marriage certificate of Emilia's parents; marriage certificate of Pedro A. Canals to the aforesaid Emilia Frau; certificate of taxes assessed upon the property of Canal during fiscal year 1900-1901; another certificate of Dr. Sein concerning medical assistance to Emilia Frau and the authority given Santos to represent Emilia Frau in her suit against Canals.

"The complaint was admitted, and pursuant to the cautionary measures prescribed by General Order of March 17, 1899, the court appointed the plaintiff's mother as her temporary guardian, assigned the monthly allowance of fifty dollars to the wife as alimony to be levied upon the property belonging to Canals, should he fail to make immediate payment thereof, and ordered that a notice of the suit be entered in the Registry of Property, and twenty days notice of the same be served upon defendant and the prosecuting attorney.

"Simón Largé, Esq., representing Pedro A. Canals, answered the complaint, and demurred on the ground that the court had no jurisdiction (of the parties) in view of the fact that they were foreigners as shown by the documents which he submitted. After the hearing on the demurrer the District Court made an order maintaining its jurisdiction to hear and determine the action for divorce and ordering that it be proceeded with according to rule 62 of General Order No. 118, series of 1899.

"Upon the appearance of the parties for the purpose of proposing their evidence, the plaintiff, Emilia Frau, proposed that of a confession in court by defendant in reply to interrogatories which would be presented at the hearing, which was declared pertinent by the court; the reading at the same proceeding of the certificates of baptism and of the record of proceedings to avoid litigation which were attached to the complaint; the reading of a copy

en un todo conforme con lo dispuesto en el párrafo 62 de la Orden General No. 118 de 1899.

*Resultando:* que en la comparecencia para la proposición de pruebas, la demandante, ó sea Doña Emilia Frau, propuso y fué declarada pertinente, la confesión judicial de Don Pedro A. Canals, según el pliego de posiciones que en el acto del juicio presentaría: la lectura en el mismo acto de las partidas de bautismo y acto de conciliación que acompañó á la demanda: lectura de la copia del documento y demanda de tercería interpuesta contra Don Pedro A. Canals, por el Dr. Sein, de Lares, quien embargó á Canals sus muebles para pagos de honorarios devengados por Sein en la curación de la Sra. Frau: lectura de documentos privados relativos á la intervención de respetables vecinos del pueblo de Lares en el asunto ventilado: recibos de honorarios por el Dr. Sein de trescientos dollars que pagó el Sr. Canals para asistencia facultativa de la Sra. Frau: lectura también de los documentos privados producidos por los Sres. Doctores Blanes, Asenjo y Sein, referentes á la asistencia de la esposa enferma, carta escrita con lápiz de Doña Ruperta Vázquez, madre de la demandante, acerca de la enfermedad de su hija y que los peritos médicos don Manuel Martínez Roselló, Don Guillermo Curbelo y Don Tulio López Gaztambide declarasen también en el acto del juicio oral acerca de las preguntas que se le hicieran, y la testifical de los testigos cuya lista presentó. Con el carácter de subsidiaria presentó la prueba de reconocimiento pericial por el profesor de instrucción Don Rafael Janer, de cotejo de letras.

*Resultando:* que Don Pedro A. Canals propuso por su parte prueba de confesión judicial de Doña Emilia Frau: documental consistente en la lectura durante el juicio de las certificaciones facultativas de los médicos Don José E. Saldaña, de San Juan y Don Francisco Blanes, de Lares, y la del médico americano Mr. Cuttiff: cotejo de letras con carácter de los documentos que no reconocieren sus firmantes, y testifical, toda la cual se declaró pertinente, señalándose la comparecencia que la ley previene para que las partes se pusiesen de acuerdo en cuanto al nombramiento de peritos, celebrándose con asistencia de sus representantes legales y quedando nombrados por el actor Don Manuel Martínez Roselló, de Arecibo; por el demandado, Don Francisco Blanes, de Lares, y como perito tercero, Don Tulio López Gaztambide, de Arecibo, todos médicos.

*Resultando:* que celebrado el juicio oral con asistencia de los Letrados representantes de las partes, practicóse la prueba de la demandante y Don Pedro A. Canals compareció á absolver posiciones, y declaró que su esposa Doña Emilia Frau, después de enferma, se obstinó en marcharse á casa de su madre Doña Ruperta Vázquez, con quien estaba disgustado Canals, haciéndolo por fin contra la voluntad de éste, quien le aseguró que en la casa conyugal no le faltaría nada y negó · que él hubiera prohibido la

of the document and complaint in intervention instituted against Pedro A. Canals by Dr. Sein, of Lares, who had levied an attachment on Canals' furniture in proceedings for the recovery of his fees for medical attendance to his wife, Mrs. Frau; the reading of private documents relating to the intervention of residents of the town of Lares in the matter in issue; receipts for three hundred dollars of Dr. Sein's fees, paid by Mr. Canals, for medical attendance upon Mrs. Frau; the reading also of the private documents exhibited by Drs. Blanes, Asenjo and Sein, with reference to the treatment of the sick wife; a letter from plaintiff's mother, Ruperta Vázquez, written in pencil, in regard to her daughter's disease; that the medical experts Manuel Martinez Rosselló, Guillermo Curbelo and Tulio López Gaztambide, be also required to testify at the trial in reply to such questions as might be put to them, and that the witnesses named in the list presented be summoned to testify; and by way of supplementary evidence, she offered that of comparison of handwriting to be made by the expert witness, Professor Rafael Janer.

"Pedro A. Canals proposed as evidence a confession in court by Emilia Frau; documentary evidence consisting of the reading at the hearing of the certificates of Dr. J. E. Saldaña, of San Juan, and Dr. Francisco Blanes, of Lares, and that of the American physician, Mr. Cuttiff; comparison of handwriting by way of corroborative evidence of documents not acknowledged by the signers thereof, and the testimony of witnesses, all of which was declared pertinent by the court, and a day was set for the appearance of the parties provided for by law in order that they might come to an agreement as to the appointment of experts; and the same having taken place with the attendance of the counsel for both parties, the plaintiff appointed Dr. Martinez Rosselló, of Arecibo, and the defendant Dr. Francisco Blanes, of Lares, while Dr. López Gaztambide, of Arecibo, was selected as a third expert, all of them being physicians.

"At the oral hearing, counsel for both parties being present, the evidence proposed by plaintiff was introduced, Pedro A. Canals testifying, in reply to interrogatories propounded, that when his wife, Emilia Frau, fell ill she insisted upon going to the house of her mother, Ruperta Vázquez, with whom Canals had quarreled, and finally did so against his wishes, he having assured her that at their home she would lack nothing. He denied having given orders at the apothecary's not to supply medicine for her, or that he had not allowed her to be visited by a specialist. Ruperta Vázquez, Emilia Frau's mother, testified to the effect that while her daughter was suffering from the contagious disease contracted from her husband shortly after their marriage, she went to her mother's house for the purpose of being properly attended, and that Canals had given orders that no medicine should be supplied her (by the apothecary). Dr. Sein, of Lares, who had attended Emilia Frau testified that three days after the latter's marriage, she began to suffer from

suministración de medicinas en las boticas, ni que la visitara ningún especialista: Doña Ruperta Vázquez, madre de Doña Emilia Frau, se expresó en el sentido de que estando su hija enferma, de la enfermedad que la contagió su marido, hallándose recién casada, se fué á casa de la madre para atender á su curación, y que Canals había dado orden de que no se la despachasen medicamentos. El Dr. Sein, de Lares, que asistió á Doña Emilia Frau, declaró que á esta señora, á los tres días de casada, se le presentó flujo blenorrágico, habiéndola asistido él por espacio de algún tiempo y que el esposo Canals satisfízole varias cantidades por razón de honorarios de la asistencia de la Doña Emilia. Los testigos Don Bernardino Vázquez, tío de la demandante y Don Vicente Aquilué, declararon entre otros particulares, que Doña Emilia Frau se marchó á casa de su madre porque ella entendía que así estaría mejor asistida en su enfermedad.

Entrándose en la prueba del demandado, Doña Emilia Frau compareció á absolver posiciones y manifestó que tres días después de casada observó en sus órganos genitales un flujo de carácter desconocido y grande irritación, el cual fué en aumento hasta el punto de tener que llamarle la atención á su esposo, quien le dijo que no era cosa de importancia; pero como el mal siguiera en aumento, púsolo en conocimiento de su madre y del Dr. Sein, quien empezó á medicinarle. Su marido no quiso interrumpir las relaciones sexuales y ella tuvo un aborto de seis meses; que en la farmacia le negaban los medicamentos, y como no estaba bien asistida, vióse en la precisión de marcharse al lado de su madre, en donde continuó asistiéndola el Dr. Sein; que la vieron también otros facultativos y que en la actualidad seguía enferma, al lado de su madre, en donde estaba depositada por la Corte de Distrito; que el mal le había invadido el interior de los órganos genitales y que se sentía bastante enferma. Doña María Frau, hermana de la demandante, declaró en términos análogos. El Dr. Don Valeriano Asenjo fué llamado en consulta para el aborto de Doña María Frau, y que como médico de Lares hacía un año visitaba la casa de los señores, digo, esposos Canals, y no observó nada irregular. Los testigos Doña Felícita Ramos y Don José Más Fajas, declararon en el sentido de ser un hecho cierto la enfermedad de la Frau, así como Don Miguel Coll y Rullán. Los peritos médicos Sres. Martínez Roselló, Francisco Blanes y López Gaztambide, informaron: el primero, que Doña María Frau padecía de blenorragia por contagio directo, la cual blenorragia, por el tiempo que llevaba localizada en los órganos genitales de la paciente, había invadido el útero y lesionado los basos adyacentes. Esa enfermedad, no atendida con arreglo á las prescripciones de la ciencia, puede traer complicaciones gravísimas, sobre todo en la mujer, y á veces la muerte. El Sr. Blanes no estuvo conforme con el perito Sr. Martínez Roselló en cuanto á la naturaleza de la enfermedad padecida por Doña Emilia Frau, y el perito, Dr. López Gaztambide, perito tercero

a blennorrhea, for which he had treated her for some time, and that Canals, her husband, had paid him various sums of money as his fees for such attendance. The witnesses Bernardino Vázquez, plaintiff's uncle, and Vicente Aquilúe, testified, among other things, that Emilia Frau had gone to her mother's house because she understood that there she would have better care during her illness.

"Coming to the evidence proposed by defendant, Emilia Frau, in reply to interrogatories propounded, testified that three days after her marriage she had noticed in her genital organs a flow the nature whereof was unknown to her, the same being accompanied by a great irritation, which increased to such an extent that she had to call her husband's attention to it, he informing her that it was of no consequence; but as her illness continued to grow worse, she consulted her mother and Dr. Sein, who began to prescribe for her ; that her husband would not discontinue their sexual relations and she had an abortion after six months ; that at the apothecary's she was refused medicines, and as she was not properly nursed, she· had been obliged to go to her mother's, where Dr. Sein continued to treat her; that she had also been seen by other physicians, and that she continued ill at the house of her mother to whose guardianship she had been assigned by the District Court ; that the disease had invaded the interior of her genital organs and she felt very ill. María Frau, plaintiff's sister, testified to the same effect. Dr. Valeriano Asenjo, who had been called in consultation on the occasion of María (*sic*) Frau's miscarriage, and as a local physician had been visiting the house of the Canals for about a year, had failed to notice anything irregular. The witnesses Felícita Ramos and José Más Fajas, testified to the effect that Emilia Frau's illness was a positive fact, as also did Miguel Coll y Rullán. The medical experts Drs. Martinez Rosselló, Francisco Blanes and López Gaztambide submitted their report, Dr. Rosselló being of opinion that María (*sic.*) Frau was suffering from blennorrhea by direct contagion, which blennorrhea, owing to the time it had existed in the genital organs of the patient, had extended to the womb and injured the adjoining organs; that this disease, if not attended to according to the prescriptions of science, may bring about very serious complications, especially in women, and sometimes be the cause of death. Dr. Blanes dissented from the opinion of Dr. Martinez Rosselló as to the nature of the disease Emilia Frau was suffering from, · while Dr. López Gaztambide, referee appointed by both parties, stated that in view of the disagreement between Drs. Martinez Rosselló and Blanes, he refrained from expressing an opinion inasmuch as he could not base it upon any scientific data; whereupon counsel for Pedro A. Canals requested that Dr. López Gaztambide be instructed to make a scientific examination of Mrs. Frau's vaginal flow and report thereon, which request was acquiesced in by the court. At a subsequent session said referee presented his report, under

nombrado por ambas partes, manifestó que en vista de la inconformidad de los Sres. Roselló y Blanes, se abstenía de emitir su opinión, porque no la podía fundar en datos científicos, por lo que el Letrado representante de Don Pedro A. Canals pidió y el Tribunal accedió á ello, que el Dr. López Gaztambide practicase un reconocimiento científico en el flujo vaginal de Doña Emilia Frau y dictaminase después, como lo hizo el perito tercero en subsiguiente sesión con protesta del mismo Letrado que pidió el reconocimiento, protesta que se consigna en acta, en virtud del Tribunal.

*Resultando :* que, el Dr. López Gaztambide en un luminoso informe que presentó escrito al Tribunal, y que corre unido á los autos del pleito, dictaminó que es opinión general admitida por gran número de patológicos que la existencia del microbio *gonococus* es síntoma de la existencia ,de la blenorragia, aunque no se atrevía á sentar terminantemente que dicho microbio fuese el producto de la enfermedad : que el microbio *gonococus* existió en los órganos genitales de la Sra. Frau, y convino con su compañero el Dr. Martinez Roselló, que la blenorragia ó gonorrea es una enfermedad en la mujer que si se la desatiende puede producir fatales consecuencias, como la muerte de la paciente.

*Resultando :* que después de examinadas y apreciadas todas las pruebas propuestas, se votó esta sentencia por unanimidad de los jueces; habiéndose observado en la tramitación del pleito las formalidades legales. Siendo Ponente el Presidente del Tribunal Don Felipe Cuchí y Arnau.

*Considerando :* que la frase maltrato de obra, empleada como causa de divorcio por la Orden General del Gobierno Militar Americano, de 17 de Marzo de 1899, equivalente á la *sevitia* de los textos eclesiásticos, ó la *cruelty* de los ingleses, consiste no solo en la repetición de actos externos de violencia de un cónyuge para con el otro, sino también en cualquier conducta seguida por uno de ellos hacia el otro, que haga físicamente imposible la cohabitación de ambos, bajo un mismo techo, so pena de inminente riesgo para la vida del cónyuge perseguido.

*Considerando :* que siendo Doña Emilia Frau y Vázquez perfectamente sana y entera al tiempo de casarse con Don Pedro Antonio Canals, no es presumible que otro que no fuera su marido la contagiase con una enfermedad venérea, máxime cuando este mal se le presentó en sus órganos sexuales á los tres días de casada, durante cuyo intervalo de tiempo no tuvo ella trato con ningún cuerpo que hubiera podido producirle el contagio indirecto de la enfermedad venérea expresada.

*Considerando :* que es un hecho probado en autos que desde que se le presentó el mal venéreo á Doña Emilia Frau, hasta la fecha en que ésta se fué á vivir al lado de su madre, ocho meses antes, próximamente, de interponer esta demanda de divorcio contra su esposo, se fué agravando la enfermedad de la demandante, sin que durante ese tiempo hubieran sufrido

protest of the attorney who had requested the examination, which protest was entered upon the record by order of the court.

"Dr. López Gaztambide, in a luminous report presented by him in writing to the court, and which was attached to the record of the case, stated that it was an opinion admitted by a great number of pathologists that the presence of the microbe *gonococcus* is the symptom of the existence of blennorrhea, although he would not venture to affirm that said microbe was the product of the disease; that the microbe *gonococcus* was to be found in the genital organs of Mrs. Frau, and he agreed with his colleage Martinez Rosselló, that blennorrhea or gonorrhea is a disease which, if neglected in a woman, may produce fatal consequences, such as the death of the patient."

"After examining and considering all the evidence introduced, the court, all the legal formalities having been observed in the conduct of this case, unanimously rendered the following opinion prepared by Presiding Judge Felipe Cuchí y Arnau.

"The words *maltrato de obra*, mentioned as a cause for divorce in the General Order of the American Military Government, of March 17, 1899, being the equivalent of *sevitia* of the ecclesiastical texts, and of *cruelty*, of the English, should be construed to mean, not only the repetition of outward acts of violence by one spouse against the other, but also any conduct on the part of one of them toward the other, which renders the cohabitation of both under the same roof physically impossible, except at the risk of the persecuted spouse's life.

"Inasmuch as Emilia Frau y Vázquez was perfectly healthy and sound at the time of her marriage to Pedro Antonio Canals, it is not to be presumed that any one except her husband could have infected her with a venereal disease, especially when said disorder made its appearance in her sexual organs three days after her marriage, during which time she came in contact with nothing that could have been the indirect cause of aforesaid venereal disease.

"It has been proven that from the time of the discovery by the plaintiff of the venereal disease to the date when she went to live with her mother, nearly eight months prior to the institution of this divorce suit against her husband, the disease continued to become more and more serious; but this did not interfere with the sexual relations of the couple, which continued uninterrupted, owing to the husband's insistance. so much so, that the plaintiff was obliged to seek refuge at her mother's house.

interrupción las relaciones sexuales entre los cónyuges, por exigencia del marido, hasta el punto de que la esposa tuviera necesidad de salir de la casa conyugal para refugiarse al lado de su madre.

*Considerando:* que el informe de los peritos médicos demuestra que la enfermedad de la demandante es de tal índole que, desatendida, pudiera acarrear la muerte de la paciente, y esta sola consideración es suficiente para hacer imposible la cohabitación de los cónyuges bajo un mismo techo, tanto más cuando consta en autos que la esposa enferma se vió obligada á abandonar la casa de su marido por no prestarle éste la necesaria asistencia para su curación.

*Considerando:* que la gonorrea ó blenorragia desatendida en la mujer puede acarrearle la muerte, según dictamen de los peritos facultativos, y habiendo el demandado Don Pedro Antonio Canals desatendido la enfermedad de su mujer hasta el punto de hacer que en las farmacias de la localidad negaran á ésta el despacho de los medicamentos necesarios para la curación de una enfermedad contagiada por él mismo, ha incurrido en verdadero maltrato de obra hácia su cónyuge, que no consiste solo en ejercitar actos externos de violencia hácia él, si que también en verificar cualesquiera otros actos de maldad que coloquen al cónyuge ofendido en inminente riesgo de perder la vida.

*Considerando:* que el divorcio por maltrato de obra á que se refiere la Orden General de 17 de Marzo de 1899, fúndase en un principio de humanidad al par que de derecho, porque tiende á poner remedio á la situación desamparada de un cónyuge que se ve en peligro constante por la conducta cruel del otro y se ha probado hasta la evidencia que la conducta de Don Pedro A. Canals hácia la demandante era cruel y alevosa porque se ejercía no sólo contra una mujer, sino contra una mujer enferma.

*Considerando:* que aun presumiendo que el marido ignorase la enfermedad que él mismo padecía cuando cohabitó con su mujer, la conducta observada por él después que la enfermedad se manifestó en su esposa, no facilitando á ésta la asistencia requerida por su estado y obstinándose en celebrar nuevas coyundas con ella, denota que voluntariamente la hacía víctima de su crueldad y asumía la grave responsabilidad de un resultado funesto.

*Considerando:* que el haber asignado esta Corte de Distrito á Doña Emilia Frau y Vázquez, al admitir su demanda, una pensión de cincuenta dollars mensuales para alimentos mientras se sentenciaba el pleito de divorcio por ella promovido contra su esposo Don Pedro Antonio Canals, la cual pensión había de pagarse de los bienes del Canals, fué como medida provisional y en virtud de lo establecido en el párrafo 21 de la Orden General de 17 de Marzo de 1899, por cuyo motivo debe cesar tan pronto como se haga firme la sentencia definitiva que ponga término al pleito.

*Considerando:* que es consecuencia de la sentencia que declara el divorcio,

"The report of the medical experts shows that the plaintiff's illness is of such a nature, that, if neglected, it might cause the death of the patient, which consideration is of itself sufficient to render impossible the cohabitation of the spouses under the same roof, especially when it appears from the record that the sick wife had to abandon her husband's house, because he refused to afford her the assistance necessary for her cure.

"A neglected gonorrhea or blennorrhea, when the patient is a woman, may be the cause of her death, according to the opinion of the medical experts, and Pedro Antonio Canals, having been so negligent of his wife's illness, that the apothecary shops of the town had orders not to dispatch the medicines necessary to cure the disease she had contracted from him, is really guilty of cruelty of a physical character toward his wife, which cruelty does not consist only in committing outward acts of violence against her, but also in performing any other malicious acts which place the offended spouse in imminent danger of losing his or her life.

"The divorce for cruelty of a physical character, referred to in General Order of March 16, 1899, is based upon a principle both of humanity and of law, because it tends to afford relief to the helpless situation of a spouse who is in constant danger by reason of the other's cruel treatment; and it has been fully established that Pedro A. Canal's conduct toward the plaintiff was cruel and treacherous, not only because the object of it was a woman, but because that woman was sick.

"Even presuming that the husband did not know the nature of the disease he was suffering from when cohabiting with his wife, his conduct after the disease had been communicated to his wife, in neglecting to provide the assistance called for by her condition, and his insistance upon continuing to have carnal intercourse with his wife, showed that he willfully made her a victim of his cruelty and assumed the serious responsibility of a fatal termination.

"The order of this District Court upon admitting Emilia Frau's complaint, that she be assigned fifty dollars per month as alimony during the pendency of the divorce suit instituted by her against her husband, Pedro Antonio Canals, to be levied on the latter's property, was a temporary measure, in accordance with the provisions of paragraph 21 of General Order of March 17, 1899, and must therefore cease as soon as this case is determined by a final judgment.

"The consequence of a judgment granting a divorce is the definite separa-

la separación definitiva de los cónyuges y la de los bienes de la sociedad conyugal, perdiendo el marido que hubiese dado lugar á aquél la administración de los bienes exclusivamente propios de la mujer, si los hubiere y la mujer los reclamare.

*Considerando:* que las costas del pleito son de cargo del litigante cuyas pretensiones hubieren sido totalmente desestimadas.

*Vistos* la Orden General de 17 de Marzo de 1899 y 15 de Agosto de 1899, y el acta Orgánica de Puerto Rico, aprobada por el Congreso de los Estados Unidos en 12 de Abril de 1900 y el artículo 371 de la Ley de Enjuiciamiento Civil.

*Fallamos:* que debemos declarar y declaramos con lugar la demanda de divorcio interpuesta por Doña Emilia Frau y Vázquez contra su esposo Don Pedro A. Canals; y en su consecuencia declaramos disuelto el matrimonio de ambos cónyuges, reservando á la demandante su acción para reclamar daños y perjuicios del demandado; sepárense definitivamente éstos, asi como los bienes de la sociedad conyugal, á cuyo efecto, procédase á la liquidación de los mismos, á tenor de los artículos 1418 y siguientes del Código Civil, referentes á la disolución del matrimonio- Levántase á Don Pedro A. Canals la obligación de pasar mensualmente á su esposa la pensión de cincuenta dollars mensuales; transcríbase el encabezamiento y parte dispositiva de esta sentencia en el Registro Civil del término de Lares, y se imponen todas las costas causadas en este pleito al demandado Don Pedro A. Canals.

*Así* por esta nuestra sentencia, lo pronunciamos, mandamos y firmamos.— Felipe Cuchí.—Otto Schoenrich.—Enrique Gonzalez.— Publicación : Leída y publicada fué la anterior sentencia por el Sr. Juez Presidente Ponente en esta causa, celebrando audiencia pública el Tribunal, hoy 31 de Enero de 1902.— Certifico: Manuel de J. Calderón.—La anterior sentencia es copia fiel y conforme de los originales de su contenido á que me remito, y certifico. Y para agregar á los autos de su razón libro la presente en Arecibo, á primero de Febrero de 1902.—V. B. Felipe Cuchí.—El Secretario P. S. Manuel J. Calderón ".

*Resultando:* que notificado de esta sentencia, dicho Pedro A. Canals interpuso recurso de casación por quebrantamiento de forma y por infracción de ley, que se admitió, y con citación y emplazamiento de las partes se elevaron los autos á esta Superioridad, donde se personaron en tiempo; y este Tribunal Supremo á 18 de Febrero del año corriente, declaró sin lugar el de quebrantamiento de forma.

*Resultando:* que después del cambio de este Tribunal

tion of the spouses and of the property belonging to the conjugal partnership, the guilty husband forfeiting the administration of the property exclusively belonging to his wife, if there be any, should it be claimed by her.

"The costs shall be paid by the litigant who loses his case on all points.

"In view of General Orders of March 17 and August 15, 1899, and of the Organic Act of Porto Rico, approved by the Congress of the United States on April 12, 1900, and article 371 of the Law of Civil Procedure, we adjudge that we should sustain and do sustain the complaint filed in the divorce suit instituted by Emilia Frau y Vázquez against her husband, Pedro Antonio Canals, and accordingly we declare that the marriage bonds of the spouses are hereby dissolved, plaintiff being reserved her right of action to recover damages from defendant; said spouses are ordered to remain definitely separated, as also the property appertaining to the conjugal partnership, for which purpose, a liquidation thereof shall be proceeded with, according to articles 1418 *et seq.* of the Civil Code, with reference to the dissolution of marriages. Pedro A. Canals is relieved from the obligation of paying fifty dollars monthly, as alimony to his wife; the title and adjudging portion of this decision are ordered to be entered in 'the Civil Registry of the municipality of Lares, and all the costs of these proceedings are taxed against the defendant, Pedro A. Canals.

"Thus by this our judgment, we pronounce, command and sign.—Felipe Cuchí.—Otto Schoenrich.—Enrique González.

"Publication: The above judgment was read and published in open court by the Presiding Judge, charged with preparing the opinion of the court, this 31st day of January, 1902. Certified to by me: Manuel de J. Calderón.—The above judgment is a true and faithful copy of the original to which I refer and certify. And for the purpose of attaching the same to the record of the case this copy are issued by me in Arecibo, February 1, 1902. Correct.—Felipe Cuchí.—Manuel J. Calderón, Substitute Clerk".

Notice of this judgment having been served upon said Pedro A. Canals, he took therefrom an appeal in cassation for error of procedure and for error of law, which was allowed. And after citing the parties, the record was forwarded to this Supreme Court, where they appeared in due time, and the court, on February 12 of the present year, dismissed the appeal in cassation for error of procedure.

After this Supreme Court was transformed from a court

Supremo como Corte de Casación en Corte de Apelación, tuvieron lugar las tramitaciones necesarias bajo la ley nueva de 12 de Marzo del año corriente.

*Resultando:* que señalado día para la vista, tuvo ésta lugar en el día de ·hoy, en cuyo acto los Letrados de las partes y el Fiscal de esta Corte estuvieron presentes y alegaron cuanto estimaron conducente á los derechos de las partes recurrente y recurrida, y al° Estado.

Abogado del apelante: *Sr. Alvarez Nava.*

Abogados del apelado: *Sres. Diaz y Texidor.*

Fiscal del Tribunal Supremo: *Sr. del Toro.*

El Juez Asociado Sr. MacLeary, después de exponer los hechos anteriores, emitió la siguiente opinión del Tribunal:

*Aceptando* los fundamentos de hecho y de derecho de la sentencia apelada y vistas las disposiciones legales que se citan en la misma.

*Fallamos:* que debemos confirmar y confirmamos la sentencia que en 31 de Enero de 1902 dictó la Corte de Distrito de Arecibo, con las costas al apelante; y devuélvanse los autos á dicho Tribunal con la certificación correspondiente.

Jueces concurrentes: Sres. Presidente Quiñones y Asociados Hernández y Sulzbacher.

El Juez Asociado Sr. Figueras no formó Tribunal en la vista de este caso.